ENTERED

APR 2 9 2005

U.S. BANKRUPTCY COURT
MDNC - SD

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH THOMAS GRUBBS and | ) | CASE NO. 04-13719 |
| TERESA ANN WARREN GRUBBS | ) | |
| | ) | |
| Debtors. | ) | |

### MEMORANDUM OPINION

The single issue in this matter is whether an annuity created pursuant to Section 403(b) of the Internal Revenue Code, 26 U.S.C. § 403(b), is exempt from the claims of the Chapter 7 trustee ("Trustee") under the language of the North Carolina exemption statute that protects both "individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code." N.C. Gen. Stat. 1C-1601(a)(9).

The Court held a hearing in this matter on April 21, 2005, in Greensboro, North Carolina, at which time the Court took the matter under advisement. After considering the arguments of the parties, the evidence, and the relevant law, the Court holds that an annuity created pursuant to Section 403(b) of the Internal Revenue Code is exempt under North Carolina law because a Section 403(b) annuity – at least within the meaning of the exemption statute – is treated in the same manner as an individual retirement plan under the Internal Revenue Code.

### I. BACKGROUND

Teresa Ann Warren Grubbs (the "Debtor") obtained an NEA Valuebuilder Annuity from Nationwide Insurance Company in 1997. The parties stipulated that the Debtor's annuity is established under Section 403(b) of the Internal Revenue Code. After contributing a small amount of her paycheck each month from Alamance Burlington School System for seven years, the Debtor accumulated $10,230.56 in her annuity. When the Debtor and her husband filed a Chapter 7

1

bankruptcy on December 10, 2004, the Debtor claimed her annuity as an exempt asset.[1] The Trustee seeks to apply the value of the Debtor's annuity, inter alia, to the $30,022.81 of unsecured debt that the Debtor and her husband listed on Schedule F of their bankruptcy petition.

## II. DISCUSSION

The Trustee contends that the Debtor's annuity is not exempt because a Section 403(b) annuity is not "treated in the same manner as an individual retirement plan under the Internal Revenue Code." In support of this argument, the Trustee states that an "individual retirement plan" as defined by the Internal Revenue Code, 26 U.S.C. § 7701(a)(37),[2] specifically does not include Section 403(b) annuities. The Trustee argues that the differences between Section 403(b) annuities and "individual retirement plans" preclude the application of the North Carolina exemption statute to the Debtor's annuity. The Debtor argues that the similarities between a Section 403(b) annuity and a Section 408(a) individual retirement account ("IRA") – which is specifically defined in Section 7701(a)(37) of the Internal Revenue Code to be an "individual retirement plan" – far outweigh any differences and that a 403(b) annuity is sufficiently similar to an IRA as to be an exempt asset under the North Carolina statute.

### A. The North Carolina Exemption Statute

North Carolina has opted out of the federal exemption statute. N.C. Gen. Stat. § 1C-1601(f) ("The exemptions provided in The Bankruptcy Act, 11 U.S.C. § 522(d), are not applicable to residents of this State."). Thus, as a preliminary matter, the Court must ascertain the General

---

[1] The Debtor claimed the exemption pursuant to 11 U.S.C. § 541(c)(2), N.C. Gen. Stat. § 1C-1601(a)(9), and N.C. Gen. Stat. § 135-9. Because this matter can be resolved pursuant to N.C. Gen. Stat. § 1C-1601(a)(9), the Court will not address the other grounds that the Debtor asserted for her exemption.

[2] That section states,
(37) Individual retirement plan. The term 'individual retirement plan' means--
   (A) an individual retirement account described in section 408(a), and
   (B) an individual retirement annuity described in section 408(b).
26 U.S.C. § 7701(a)(37).

Assembly's meaning when it chose to exempt "individual retirement plans as defined by the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code" inasmuch as a Section 403(b) annuity is not specifically exempted under the plain language of the statute and an ambiguity exists over whether such annuities are included within the scope of the statute. N.C. Gen. Stat. § 1C-1601(a)(9); Barnhill v. Johnson, 503 U.S. 393, 401 (1992)(directing a court to resolve a statutory ambiguity by examining the statutory history); Allen v. Geneva Steel Co. (In re Geneva Steel Co.), 281 F.3d 1173 1178 (10th Cir. 2002)("[A]mbiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses.")(quoting 2A Norman J. Singer, Statutes and Statutory Construction, § 45.02, at 11-12 (6th ed. 2000)).

Before the 1995 amendments to N.C. Gen. Stat. § 1C-1601, the General Assembly had not included any retirement plans in the list of general exemptions. As part of legislation enacted in 1995, however, the General Assembly chose to allow a debtor to exempt from the claims of creditors "[i]ndividual retirement accounts as described in Section 408(a) of the Internal Revenue Code, individual retirement annuities as described in Section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in Section 408(c) of the Internal Revenue Code." § 1C-1601(a)(9) (1996). Notably, retirement trusts created pursuant to Section 408(c) are not specifically included in the Internal Revenue Code's general definition of an "individual retirement plan." 26 U.S.C. § 7701(a)(37). The inclusion of Section 408(c) trusts evidences an intent by the General Assembly not to strictly bind the State law exemption for retirement plans and annuities to the Internal Revenue Code's definition of an "individual retirement plan."

Four years later, the General Assembly again amended the exemption statute and chose much broader language, which is the version of the statute applicable to this case. In 1999, not only were individual retirement plans exempted, but "any plan treated in the same manner as an individual retirement plan by the Internal Revenue Code" was also exempted from the claims of creditors. N.C. Gen. Stat. § 1C-1601(a)(9) (2000). The alteration of the statutory language evidences an intent by the General Assembly not to limit the exemption solely to retirement plans created pursuant to Section 408(a) and (b) of the Internal Revenue Code and would seem to encompass trusts created pursuant to Section 408(c), which had previously been specifically exempted, as well as other types

3

of retirement tools recognized by the IRS. Exactly what the General Assembly meant when it required a plan to be treated "in the same manner as an individual retirement plan" before that plan could be declared exempt under North Carolina law was not specifically stated.[3] In any event, the language of the statute plainly does not limit the applicability of the exemption to IRAs.

Exemption statutes are to be interpreted liberally. In re LoCurto, 239 B.R. 314, 318 (Bankr. E.D.N.C. 1999)("This court has held many times that North Carolina's exemption laws are to be liberally construed . . . ."). Accordingly, based on: (1) the enactment of legislation in 1995 to protect a debtor's retirement income from the claims of creditors; (2) the inclusion of Section 408(c) trusts in the 1995 legislation, which are not within the Internal Revenue Code's general definition of an "individual retirement plan;" (3) the expansion of the exemption language in 1999 so that exempt retirement plans were not strictly limited to Section 408 of the Internal Revenue Code; and (4) the policy that exemption statutes are to be interpreted liberally, the Court concludes that the North Carolina General Assembly's purpose in enacting N.C. Gen. Stat. § 1C-1601(a)(9) was to protect a debtor's right to receive retirement benefits and not to limit the exemption to a specific class of retirement plans or trusts. Rather than give a blanket exemption to all "retirement" plans, the General Assembly limited the exemption to any retirement tool that was "treated in the same manner as an individual retirement plan under the Internal Revenue Code." In so doing, the General Assembly prohibited debtors from labeling an ordinary savings account as an individual retirement

---

[3]Although it has no probative value in this matter, the Court notes that the General Assembly is currently proposing further changes to § 1C-1601, which would alter the language of the statute to exempt the following:

> Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code, including individual retirement accounts and Roth retirement accounts as described in section 408(a) and section 408A of the Internal Revenue Code, individual retirement annuities as described in section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in section 408(c) of the Internal Revenue Code.

Property Exempt from Enforcement Actions, N.C. H.B. 1176 (filed on April 11, 2005). Like the amendments in 1995 and 1999, the use of broad language in the proposed exemption statute demonstrates that the General Assembly might be intending to further expand on its meaning by specifically including Roth IRAs and Section 408(c) trusts, neither of which are specifically defined by the Internal Revenue Code to be "individual retirement plans."

4

plan and thereby shielding that asset from the reach of creditors under the charade that the exemption statute applied.

## B. "Treated in the Same Manner"

There are differences between annuities created pursuant to Section 403(b) of the Internal Revenue Code and IRAs created pursuant to Section 408(a) of the Internal Revenue Code. In their commonly understood meaning, a "retirement annuity" is a right to receive a fixed amount of money payable periodically, that begins only after the annuitant's retirement. Black's Law Dictionary 99 (8th ed. 2004). An "individual retirement account" is a savings or brokerage account to which an individual may contribute a specified amount of money annually – tax free – and the interest earned in the account is not taxed until the sums are withdrawn, which cannot be done until the participant reaches the age of 59 ½ unless the participant pays a 10% penalty. Id. at 789. Similarly, if a person holds a Roth IRA, then the contributions to the savings or brokerage account are taxed when made, but no further taxes are assessed on the interest or when the money is withdrawn. Id. When an retirement annuity is created by a tax exempt organization under Section 501(c) of the Internal Revenue Code, which covers entities such as a religious, charitable, scientific, or educational institutions, then the Internal Revenue Code affords the annuity special rights pursuant to Section 403(b) of the Internal Revenue Code. Principally, like an IRA, an individual's contributions to the annuity, up to a statutory maximum, are made tax free. Thus in layman's terms, both a retirement annuity created by a 501(c) organization pursuant to Section 403(b) of the Internal Revenue Code and an IRA provide for tax free retirement savings that are not to be withdrawn before the participant reaches the age of 59 ½, at which time the distributions will be subject to taxation. Pursuant to the Trustee's argument, only the IRA and not the Section 403(b) retirement annuity is exempt under the North Carolina statute.

An analysis of the technical nature of Section 403(b) annuities and Section 408(a) IRAs reveals that the similarities between the two types of retirement devices are formidable. For example, the Debtor points out at least thirteen similarities: (1) principal contributions and accrued

interest are either excluded or exempted from gross income for purposes of taxation;[4] (2) both allow for salary reduction agreements;[5] (3) both have caps on the maximum amount that may be contributed during a single year;[6] (4) rollover contributions are accepted not only from other plans, but from an IRA to a Section 403(b) annuity and visa versa;[7] (5) penalties apply for early withdrawal

---

[4] 26 U.S.C. §§ 403(b)(1) ("[C]ontributions and additions . . . for such annuity contract shall be excluded from the gross income of the employee . . . ."); 408(a) (incorporating the deduction limits of Section 219).

[5] §§ 403(b)(1)(E) ("If . . . in the case of a contract purchased under a salary reduction agreement, the contract meets the requirements of section 401(a)(30) . . . ."); 408(p)(2)(A)(i) ("For purposes of this subsection, the term 'qualified salary reduction arrangement' means a written arrangement of an eligible employer under which--(i) an employee eligible to participate in the arrangement may elect to have the employer make payments--(I) as elective employer contributions to a simple retirement account on behalf of the employee, or (II) to the employee directly in cash . . . .")

[6] §§ 403(b)(1) ("[C]ontributions and other additions by such employer for such annuity contract shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such contributions and additions . . . does not exceed the applicable limit under section 415."); 415(c) (stating that contributions to "defined contribution plans" are limited to "the lesser of--(A) $ 40,000, or (B) 100 percent of the participant's compensation."). Cf. §§ 408(a)(1) ("[C]ontributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A)."); 219(b)(1)(A) (capping the tax exempt contributions of an individual at $4,000 in 2005).

[7] §§ 403(b)(8) (providing that a total distribution from the annuity contract shall not be includible in an employee's gross income to the extent that it is transferred to an IRA); 408(d)(1), (3) (providing that rollover contributions are not taxed if received into the new retirement fund within sixty days and including Section 403(b) annuities as a source for eligible rollover contributions). A "rollover" is "[t]he transfer of funds (such as IRA funds) to a new investment of the same type, esp. so as to defer payment of taxes." Black's Law Dictionary 1355 (8th ed. 2004). As succinctly stated in a cumulative bulletin by the Internal Revenue Service:

> An "eligible rollover distribution" is a payment that may be rolled over to an "eligible retirement plan." An "eligible retirement plan" includes an individual retirement arrangement described in § 408(a) or (b) ("traditional IRA") or an "eligible employer plan." An "eligible employer plan" includes a plan qualified under § 401(a), including a profit-sharing plan or stock bonus plan (whether or not the plan includes a § 401(k) plan), a money purchase plan, or a defined benefit plan; a § 403(a) annuity plan; a § 403(b) tax-sheltered annuity; and an eligible § 457(b) plan maintained by a governmental employer (a "governmental 457 plan").

2002-1 C.B. 289 (January 14, 2002).

of funds;[8] (6) excess contributions are taxed;[9] (7) a participant's interest in both are not forfeitable;[10] (8) both provide incidental death benefits;[11] (9) neither is directly administered by the employee;[12] (10) both have the same minimum and maximum ages at which funds may, and then must be withdrawn;[13] (11) distributions are taxed when received;[14] (12) interest earned on the annuity or IRA

---

[8]   26 U.S.C. §§ 72(t)(1) ("If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income."); 4974(c) ("[T] the term 'qualified retirement plan' means . . . (3) an annuity contract described in section 403(b), (4) an individual retirement account described in section 408(a)). Cf. § 403(b)(11) (requiring that distributions not begin before the age of 59 ½).

[9]   §§ 4973(a) (imposing a 6% tax on the amount of an excess contribution made to an individual retirement account created pursuant to Section 408(a)); 4979 (imposing a 10% tax on the excess aggregate contributions under a tax-sheltered annuity plan as described in Section 403(b)).

[10]   §§ 403(b)(1)(C) ("[T]he employee's rights under the contract are nonforfeitable, except for failure to pay future premiums"); 408(a)(4) ("The interest of an individual in the balance of his account is nonforfeitable.").

[11]   §§ 403(b)(10) (requiring that rules "similar to the incidental death benefit requirements of section 401(a)" be met); 408(a)(6) (requiring that "rules similar to the rules of . . . the incidental death benefit requirements of section 401(a)" be met).

[12]   §§ 403(b)(7) ("Custodial accounts for regulated investment company stock."); 408(a) ("[T]he term 'individual retirement account' means a trust . . . ."). Section 403(b) annuities are purchased for an employee by a Section 501(c) employer (tax exempt entities such as a religious, charitable, scientific, or educational institutions. § 403(b)(1)(A). An IRA created pursuant to 408(a) is created for the exclusive benefit of an individual, and while it may be established by an employer, it is treated as a separate account and a trustee, usually a bank, is appointed. § 408(a).

[13]   §§ 401(a)(9)(C)(i) (requiring that the entire interest of an employee be distributed beginning, among other dates, no later than April 1 of the calendar year following the later of the calendar year in which the employee attains age 70 ½); 403(b)(10) ("[T]his subsection shall not apply to any annuity contract . . . unless requirements similar to the requirements of sections 401(a)(9) . . . are met."); 403(b)(11) (requiring that distributions not begin before the age of 59 ½); 408(a)(6) ("[T]he term "individual retirement account" means a trust . . . for the exclusive benefit of an individual . . . but only if . . . . rules similar to the rules of section 401(a)(9) . . . shall apply . . . ."). See also § 72(t) (imposing a ten percent penalty on IRA funds that are withdrawn early); Rousey v. Jacoway, 125 S. Ct. 1561 (2005)(holding that, under the meaning of the federal exemption statute, an IRA that was subject to a 10% penalty for early withdrawal was, among other

itself is exempt from taxation until distributed;[15] and (13) either the employee or the employer may contribute money.[16]

As stated, there are differences between Section 403(b) annuities and Section 408(a) IRAs. The language of the North Carolina exemption statute, however, does not require a quid pro quo correlation; all that is required is that a Section 403(b) annuity be treated in the "same manner as in individual retirement plan under the Internal Revenue Code." N.C. Gen. Stat. § 1C-1601(a)(9). Perhaps most telling of the above-mentioned similarities, is that rollovers between Section 403(b) annuities and Section 408(a) IRAs are permitted, meaning that the Internal Revenue Code treats both Sections as being investments of the same type.

### III. CONCLUSION

Accordingly, a Section 403(b) annuity is "treated in the same manner as an individual retirement plan under the Internal Revenue Code" so as to make the general North Carolina exemption statute governing retirement plans, N.C. Gen. Stat. § 1C-1601(a)(9), applicable to the Debtor's annuity. The Trustee's objection to the Debtor's claim of exemption will be overruled.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered contemporaneously herewith pursuant to Fed. R. Bankr. P. 9021.

---

factors, a "substantial barrier" that made the IRA payable on account of age).

[14] §§ 403(b)(1) ("The amount actually distributed to any distributee under such contract shall be taxable to the distributee (in the year in which so distributed) . . . ."); 408(d)(1) ("[A]ny amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee . . . .").

[15] §§ 403(b)(1) (providing that it is only in the year in which money is distributed from the annuity that the sums contained therein are taxable); 408(e) ("Any individual retirement account is exempt from taxation under this subtitle . . . .").

[16] §§ 403(b)(1) (incorporating the contribution limits as set forth in Section 415, which calculates the "annual addition" to an annuity based on both employer and employee contributions); § 408(a)(1) (stating that contributions may be accepted "on behalf of any individual").

This 29th day of April, 2005.

_____

THOMAS W. WALDREP, JR.
United States Bankruptcy Judge

A copy of the foregoing was served
electronically or conventionally to:

David Reid Huffman

Everett B. Saslow

Martha R. Sacrinty

Michael D West